972 A.2d 1091 (2009)
199 N.J. 341
STATE of New Jersey, Plaintiff-Appellant,
v.
Terrence ECHOLS, Defendant-Respondent.
A-12 September Term 2008
Supreme Court of New Jersey.
Argued December 3, 2008.
Decided March 12, 2009.
*1093 Kenneth P. Ply, Assistant Prosecutor, argued the cause for appellant (Paula T. Dow, Essex County Prosecutor, attorney).
Daniel V. Gautieri, Assistant Deputy Public Defender, argued the cause for respondent (Yvonne Smith Segars, Public Defender, attorney).
Jeanne Screen, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Anne Milgram, Attorney General, attorney).
*1094 Justice WALLACE, JR., delivered the opinion of the Court.
Defendant filed a petition for post-conviction relief in which he asserted multiple claims of ineffective assistance of trial and appellate counsel. The trial court denied the petition. On appeal, the Appellate Division reversed, concluding that trial counsel was ineffective for failing to fully elicit alibi evidence and for failing to object to a comment in the prosecutor's opening statement, and that appellate counsel was ineffective for not raising those issues on appeal as well as the issue of the trial court's refusal to give an alibi instruction. We granted the State's petition for certification and now reverse. We hold that this case does not meet the standard of ineffective assistance of trial or appellate counsel necessary to warrant a new trial.

I.

A.
We briefly recite the facts. On September 3, 1994, at approximately 10:25 p.m., two assailants entered Franklin Powell's home and shot and killed him. Although the faces of the assailants were covered, witnesses later identified defendant Terrence Echols and co-defendant Joseph Brown as the men who entered Powell's apartment. Darnell Jones told the police that Brown held a sheet over his head as he kicked Powell's door open and entered. A short while later, Jones heard shots and saw two men flee the apartment. In his second statement to the police, Jones identified defendant as the man accompanying Brown as they fled from Powell's apartment.
Defendant and Brown were arrested on September 8, 1994. Defendant waived his Miranda[1] rights and gave two statements. The gist of his statements was that he was outside in the parking lot, and he did not shoot Powell. Defendant essentially identified Keith Eutsey as a person who entered Powell's home. Based on those statements, defendant was released on bail and Eutsey was arrested and charged in the homicide. Later, defendant admitted to a private detective employed by Eutsey's attorney that he had falsely accused Eutsey. As a result, the charges against Eutsey were dismissed.
A grand jury indicted defendant on nine counts: conspiracy to commit murder; second degree burglary; murder; felony murder; possession of a firearm; possession of a weapon for an unlawful purpose; giving a false statement to the police; false swearing; and hindering his own prosecution. Brown was charged in six of those counts.
Prior to trial, three people, Shalika Thomason, Ada Dansby, and Tracie Irvin, claimed that defendant had threatened them. Subsequent to the alleged threats, each provided a statement implicating defendant in the shooting. Thomason, defendant's former girlfriend, claimed that on November 10, 1994, defendant came to her apartment armed with two guns and a knife. He tried to force her to leave the apartment and stuck her with a knife. Further, defendant complained to her that he would have to serve twenty-five years in jail because of what she told the police. After Thomason's friend attempted to intervene, defendant threatened to kill Thomason. Thomason told her friend to call the police and she did. Following the incident, Thomason told police that she had seen defendant enter Powell's home the night of his death, and saw him emerge immediately following the gunshots. She later repudiated her statement, claiming that she implicated defendant as revenge for his infidelity.
*1095 Tracie Irvin, the mother of the victim's son, gave a statement to the police on May 20, 1995. She said that defendant told her to stop talking about the murder or he would kill her. She testified that she saw defendant running from the back of Powell's house holding his side.
Ada Dansby, the mother of defendant's son, reported that on June 5, 1995, defendant robbed her and threatened to kill their son like he killed Powell because the boy's name included the victim's nickname, which was Quill. Dansby filed a complaint against defendant and gave a statement to the police that implicated defendant in Powell's death. She repudiated her statement at trial.

B.
In June 1996, defendant and Brown were tried before a jury. Relevant to this appeal, the following three incidents occurred during trial. First, the prosecutor made a comment in the opening statement alluding to the jury's safety. Second, defense counsel elicited alibi testimony that he asserted was not alibi testimony. Third, defendant's counsel later requested that the trial court give the jury an alibi charge, but the court denied that request.
The first incident occurred in the prosecutor's opening statement. The prosecutor outlined the State's case to the jury and summarized portions of the witnesses' expected testimony. He noted that several of the witnesses repudiated their statements, and then said:
[L]isten to everything with an open mind. [The witnesses who had allegedly been intimidated] are not people who like you are able to sit in a fairly nice courtroom in Essex County. The sheriff officers are here, so that you can feel safe and comfortable. You know that nothing is going to happen to you. You are just hearing evidence. Think about people who are living in the community and why they might say, Well, my son is more important. My life is more important. I never saw nothing. I don't want to be involved anymore. Get me out of this.
Keep an open mind. That is all I'm going to ask at this point. Listen openly and carefully to the evidence you hear from this witness stand.
[Emphasis added.]
There was no objection to those comments.
The second incident occurred when defense counsel indicated that he wanted to call Rashine Smallwood as a witness. After the prosecutor asked for a proffer, defense counsel replied that Smallwood would testify that he, Smallwood, was outside the residence with defendant and several others when the incident occurred. The prosecutor objected, asserting that defendant was attempting to offer alibi testimony in contravention of the court rules that require timely notice of alibi. When the trial court asked defense counsel if Smallwood would present alibi testimony, defense counsel replied no. Prior to ruling on the prosecutor's objection, the trial court ordered Smallwood to testify outside the presence of the jury. At that hearing, the following colloquy occurred between defense counsel and Smallwood:
Q. Where were you?
A. In the parking lot, sir.
...
Q. Okay. After you heard the gunshots, what did you do.
A. Ran.
Q. Okay. Now, when you heard the gunshots did you see anybody else around?
A. Excuse me?
Q. When you heard the gunshots did you see anybody else around?
A. As far as what?

*1096 Q. Well, was there anybody else that you could see when you heard the gunshots?
A. Oh yes. When I ran we got down the end of Broad Street, it was me, Jasmine, Raymond, and [defendant].
The prosecutor then questioned Smallwood:
Q. So, you're testifying now that at all times you were with Terrence Echols?
A. I was around him, he was in my sight, my eye sight.
Q. He was within your sight the whole time?
A. Yes.
Q. And he never left your sight for that two hour period?
A. Yes.
Following that testimony, the prosecutor renewed his objection to Smallwood's alibi testimony. Defense counsel argued that as a result of a mistake in the names of various witnesses, he had just realized for the first time that Rashine Smallwood was the same Rashine who would testify that defendant was in the parking lot at the time bullets were fired. The trial court ruled that the State was aware of defendant's statement that he was in the parking lot when the victim was shot and found that Smallwood's testimony was not surprise testimony. Therefore, balancing the equities, the trial court concluded that Smallwood would be allowed to testify before the jury.
When the trial resumed in the presence of the jury, defense counsel elicited the following testimony from Smallwood:
Q. I'm going to ask you to remember back to Saturday evening, September 3rd, 1994, 10:00, 10:30 in the evening. Remember that day?
A. Yes.
Q. And where were you at the time?
A. In the parking lot.
...
Q. Now, were you with anybody in the parking lot that evening at that time?
A. I was with a girl at that time.
Q. Okay. With anybody else?
A. I was around Jasmine Nelson, Raymond George and [defendant].
Q. Okay. And did something happen then, did you hear any shots?
A. Yes, I heard shots.
Q. Do you know how many you heard?
A. Can't remember.
Q. And what did you do?
A. I ran.
Q. Did you seedid anybody else run?
A. Yes.
Q. Did you run together?
A. Yes.
Q. And who is it, tell the jury who is it who ran with you?
A. Raymond George, Jasmine Nelson and [defendant].
Q. Okay. At any time, did you see any gun in the hands of [defendant]?
A. No.
During cross-examination by the prosecutor, Smallwood said that he saw defendant in the parking lot, but that they were not together. Smallwood said he was talking to a girl when the shots rang out, and as he ran away, he saw defendant running also.
The third incident occurred during the charge conference. Defense counsel requested that based on Smallwood's testimony, the court should provide the jury with an alibi charge. The prosecutor objected. After noting that defendant had not given notice pursuant to Rule 3:12-2(a), the trial court determined that this was not an appropriate case for an alibi charge and declined to give the charge.

*1097 C.
The jury acquitted defendant and Brown of conspiracy and murder, but convicted both of felony murder, aggravated manslaughter, third degree burglary, and the weapons offenses. Defendant was also convicted of false swearing, false representation, and hindering. The trial court sentenced defendant to life, with a thirty-year period of parole ineligibility for felony murder, and a consecutive eighteen-month term, with a nine-month period of parole ineligibility, for false swearing. The court imposed concurrent terms on the remaining convictions. The aggregate sentence was life plus eighteen months, with a thirty-year and nine-month period of parole ineligibility. On direct appeal, defendant's convictions and sentence were affirmed, and on January 2, 2001, this Court denied certification. 167 N.J. 629, 772 A.2d 931 (2001).
Defendant filed a petition for post-conviction relief (PCR) in July 2001, which was denied by the trial court. On appeal, in a published opinion, the Appellate Division reversed and remanded for a new trial. State v. Echols, 398 N.J.Super. 192, 219, 941 A.2d 599 (2008). The panel found that trial counsel was deficient in not objecting to "the prosecutor's improper comments about the danger defendant posed, and [that] the failure of appellate counsel to pursue the matter on direct appeal undermines confidence in the result and deprived defendant of the effective assistance of counsel guaranteed by the Sixth Amendment." Id. at 216, 941 A.2d 599. The panel further found that trial counsel was deficient for failing to object to the prosecutor's opening statement, id. at 212-13, 941 A.2d 599, and for failing to elicit clear testimony from Smallwood that "defendant was in the parking lot and not in Powell's apartment when Powell was murdered," id. at 206, 941 A.2d 599. Further, the panel found that the trial court erred in not giving an alibi charge and that "appellate counsel's failure to pursue the matter on appeal deprived defendant of the effective assistance of counsel." Id. at 209, 941 A.2d 599.
We granted the State's petition for certification, 195 N.J. 522, 950 A.2d 908 (2008), and we granted the Attorney General amicus curiae status.

II.
The State argues that the Appellate Division used an erroneous standard in finding that trial and appellate counsel were constitutionally ineffective. The State contends that the prosecutor's comments were an explanation of why some of the witnesses who had implicated defendant had changed their stories, and never stated that defendant or other members of his gang presented any special danger to the jurors. The State adds that defense counsel's failure to object demonstrates that he did not believe that the remarks were prejudicial. The State also argues that the Appellate Division improperly speculated on what the jury understood after trial counsel elicited Smallwood's alibi testimony, and that even if the jury had interpreted the testimony in the same manner as the Appellate Division, defense counsel's performance was still not ineffective. Further, the State adds that Smallwood's testimony was not alibi testimony, and therefore it was error for the Appellate Division to conclude that the failure to provide a separate alibi charge required a new trial. Even if Smallwood's testimony were alibi evidence, the State contends that the panel's decision is contrary to the longstanding line of cases in New Jersey which provide that the failure to give a separate alibi instruction, even upon request, does not constitute reversible error.
In contrast, defendant argues that his trial counsel was ineffective in failing to *1098 file a timely notice of alibi and in failing to elicit more complete alibi testimony, and that appellate counsel was ineffective in failing to argue that the trial court erred by not providing an alibi instruction. Defendant notes that this Court recently recognized the importance of an alibi defense in State v. Bradshaw, 195 N.J. 493, 950 A.2d 889 (2008). Defendant also argues that the trial court's refusal to provide the alibi charge clearly limited defense counsel's summation and effectively deprived defendant of a fair trial. Defendant adds that the prosecutor's comment that the jurors should fear him and his fellow gang members was improper and had the capacity to produce an unjust result, and appellate counsel was ineffective in not raising that argument on appeal.
The Attorney General essentially supports the State's position and contends that defendant's petition for post-conviction relief was procedurally barred by Rule 3:22-4 because defendant's arguments could have been raised on direct appeal.[2]

III.
Our post-conviction relief proceeding is the "`analogue to the federal writ of habeas corpus.'" State v. Harris, 181 N.J. 391, 420, 859 A.2d 364 (2004) (quoting State v. Milne, 178 N.J. 486, 491, 842 A.2d 140 (2004)). Court Rules 3:22-1 to -12 control the procedures for post-conviction relief. Rule 3:22-2 establishes four grounds for post-conviction relief: (a) substantial denial in the conviction proceedings of a defendant's state or federal constitutional rights; (b) a sentencing court's lack of jurisdiction; (c) an unlawful sentence; and (d) any ground available "as a basis for collateral attack upon a conviction by ... any other common-law or statutory remedy." The burden is on the petitioner to establish the right to relief by a preponderance of the credible evidence. State v. Goodwin, 173 N.J. 583, 593, 803 A.2d 102 (2002).
Because post-conviction relief is not a substitute for direct appeal and because of the public policy "to promote finality in judicial proceedings," State v. McQuaid, 147 N.J. 464, 483, 688 A.2d 584 (1997), our rules provide various procedural bars. For example, a petitioner may be barred from relief if the petitioner could have raised the issue on direct appeal but failed to do so, Rule 3:22-4; the issue was previously decided on direct appeal, Rule 3:22-5; or the petition was filed more than five years after the judgment or sentence that was imposed, Rule 3:22-12. Although our rules provide for certain exceptions to these general rules, we have emphasized that it is important to adhere to our procedural bars. Goodwin, supra, 173 N.J. at 594, 803 A.2d 102.
To be sure, "[i]neffective-assistance-of-counsel claims are particularly suited for post-conviction review because they often cannot reasonably be raised in a prior proceeding." State v. Preciose, 129 N.J. 451, 460, 609 A.2d 1280 (1992). In State v. Fritz, 105 N.J. 42, 58, 519 A.2d 336 (1987), we addressed a criminal defendant's constitutional right to the assistance of "reasonably competent counsel" and adopted the standards for evaluating ineffective assistance of counsel claims established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
The Strickland Court created a two-part test for evaluating claims of ineffective assistance of counsel. 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. *1099 Unless both parts of the test are established, defendant's claim must fail. Ibid. The first part of the test is satisfied by a showing that counsel's "acts or omissions were outside the wide range of professionally competent assistance" considered in light of all the circumstances of the case. Id. at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Id. at 688-89, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. As a result, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. That presumption may be rebutted if defendant demonstrates that counsel's actions did not equate to "`sound trial strategy.'" Id. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 695 (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83, 93 (1955)).
The court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. For that reason, "an otherwise valid conviction will not be overturned merely because the defendant is dissatisfied with his or her counsel's exercise of judgment during the trial." State v. Castagna, 187 N.J. 293, 314, 901 A.2d 363 (2006).
The second part of the test is whether there exists a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, supra, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. That is, the challenged error must be so serious as to undermine the court's confidence in defendant's conviction. Ibid.

B.
We turn now to apply the Strickland test to defendant's various claims of ineffective assistance of counsel. We first address whether trial counsel's failure to object to a portion of the prosecutor's opening statement constituted ineffective assistance of counsel.
The asserted offending comment occurred when the prosecutor was attempting to explain to the jury why some of the witnesses who had implicated defendant in the death of Powell later changed their stories. After stating that the witnesses had been threatened and intimidated by the defendant and members of the "Hit Squad" gang, the prosecutor said that the witnesses "are not people who like you are able to sit in a fairly nice courtroom in Essex County. The sheriff officers are here, so that you can feel safe and comfortable. You know that nothing is going to happen to you. You are just hearing evidence." At the post-conviction relief hearing, the trial court found that, viewed from the perspective of the trial as a whole, "the prosecutor's comments were a reasonable attempt to explain why several witnesses' trial testimony contradicted their earlier statements to police." The Appellate Division disagreed with the trial court's assessment and found that the prosecutor "inappropriately asserted or suggested that the jurors would be in danger merely by sitting in the courtroom but for the presence of sheriff's officers." Echols, supra, 398 N.J.Super. at 201, 941 A.2d 599.
Before deciding this issue, we note some general principles regarding a prosecutor's comments at trial. "Our jurisprudence requires that prosecutors act in accordance with certain fundamental principles of fairness." State v. Wakefield, 190 N.J. 397, 436, 921 A.2d 954 (2007). *1100 They may "strike hard blows ... [but not] foul ones." Ibid. (quotation omitted). Prosecutors "are afforded considerable leeway in making opening statements and summations." State v. Williams, 113 N.J. 393, 447, 550 A.2d 1172 (1988). However, prosecutors should limit comments in the opening to the "facts [they] intend[] in good faith to prove by competent evidence," State v. Hipplewith, 33 N.J. 300, 309, 164 A.2d 481 (1960), and "`should not make inaccurate legal or factual assertions during a trial[,] and ... must confine their comments to evidence revealed during the trial and reasonable inferences to be drawn from that evidence.'" State v. Reddish, 181 N.J. 553, 641, 859 A.2d 1173 (2004) (quoting State v. Smith, 167 N.J. 158, 178, 770 A.2d 255 (2001)).
Reversal is justified when the prosecutor does not abide by the above strictures, and the conduct was "so egregious as to deprive defendant of a fair trial." Wakefield, supra, 190 N.J. at 437, 921 A.2d 954 (quotations omitted). In determining whether a prosecutor's comments meet the "so egregious" standard, a reviewing court must "consider the tenor of the trial and the responsiveness of counsel and the court to the improprieties when they occurred." State v. Timmendequas, 161 N.J. 515, 575, 737 A.2d 55 (1999). "Generally, if no objection was made to the improper remarks, the remarks will not be deemed prejudicial. Failure to make a timely objection indicates that defense counsel did not believe the remarks were prejudicial at the time they were made." Id. at 576, 737 A.2d 55 (citation omitted).
Applying the above tenets to the facts here, we do not find that the prosecutor's comments were so egregious that defendant was deprived of a fair trial. The prosecutor intended to show that several witnesses were threatened and intimidated as part of the State's effort to explain the change in their anticipated testimony, and informed the jury of that. However, the prosecutor's reference to the safety of the jurors in the courtroom was completely unrelated to the facts to be presented at trial. Consequently, the prosecutor should not have contrasted the threats and intimidation of the witnesses with the fact that the jurors would be hearing the case in a safe environment.
That being said, we are convinced that the comments by the prosecutor did not deprive defendant of a fair trial. No objection was made to the prosecutor's comments, and the trial court advised the jury in both the preliminary instructions and the final jury charge that the attorneys' comments were not evidence. In short, the prosecutor's brief reference to the safety of the jury in the beginning of the eighteen-day trial was not so egregious as to be reversible error. See, e.g., State v. Ramseur, 106 N.J. 123, 323, 524 A.2d 188 (1987) (viewing prosecutor's conduct in context of fourteen-day trial, comments were improper but did not reach level of reversible error).
Further, there being no reversible error in the prosecutor's comments, the failure of trial counsel to object to the comments or the failure of appellate counsel to raise that issue on appeal could not lead to the conclusion that there is a reasonable probability that, but for the errors of trial and appellate counsel, the outcome would have been different. We reject defendant's claim that his trial counsel and appellate counsel provided ineffective assistance of counsel in regard to this issue.

C.
We turn now to the State's contention that trial and appellate counsel were not ineffective in their handling of the alibi issue. Defendant argued, and the Appellate Division agreed, that trial counsel was ineffective for not fully eliciting Smallwood's alibi testimony. He argued *1101 that once counsel established during the Rule 104 hearing that defendant was in Smallwood's sight outside of the apartment when the shots rang out, counsel was ineffective for not eliciting that identical alibi testimony before the jury.
Although counsel might have attempted to elicit the same testimony in front of the jury as he and the prosecutor elicited during the Rule 104 hearing, his failure to do so did not render his performance "below an objective standard of reasonableness." Strickland, supra, 466 U.S. at 688, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. Before the jury, counsel established through Smallwood's testimony that several people, including defendant, were in the parking lot when Smallwood heard the shots. When Smallwood responded that he ran after hearing the shots, counsel asked if anyone else ran. Smallwood answered that he ran together with "Raymond George, Jasmine Nelson, and [defendant]" and that he saw no gun in defendant's hand. In our view that testimony was sufficient, if believed, for the jury to comprehend that Smallwood claimed that he, defendant, and others were in the parking lot when the shots were fired inside the apartment. Smallwood's testimony also supported defendant's statement that he gave to the police on September 9, 1994, in which defendant blamed others and said he was in the parking lot with a group of people when the victim was shot.
In any event, even if we assume that trial counsel was ineffective for not eliciting before the jury more precise testimony that Smallwood saw defendant in the parking lot at the same time shots were fired inside the victim's home, defendant nevertheless failed to establish the second prong of the Strickland test, that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Given the other evidence in the case, any minor deviation between Smallwood's testimony at the Rule 104 hearing and his testimony before the jury could not have affected the outcome of the trial.

D.
The State also challenges the Appellate Division's conclusion that the trial court erred in not providing an alibi charge, and that appellate counsel was ineffective for not raising that issue on direct appeal.
Our court rules establish a procedure for the use of alibi testimony. A defendant who wishes to rely on an alibi should, within ten days after a written demand by the prosecutor, furnish a list of the names and addresses of the witnesses "upon whom the defendant intends to rely to establish such alibi." R. 3:12-2(a). If a defendant fails to provide notice, the court may preclude the evidence "or make such other order or grant such adjournment, or delay during trial, as the interest of justice requires." R. 3:12-2(b).
Recently, we noted several factors the trial court should weigh in determining the appropriate sanction for a violation of our alibi rule. Bradshaw, supra, 195 N.J. at 507-08, 950 A.2d 889 (stating court should consider prejudice to both parties, whether sanction other than preclusion will preserve policy of rule, and whether failure to give notice "was willful and intended to gain a tactical advantage"). We explained that "[a]bsent a finding that the factors on balance favor preclusion, the interest of justice standard requires a less severe sanction [than preclusion.]" Id. at 508, 950 A.2d 889.
In the present case, the trial court held a hearing and determined that defendant could present Smallwood's testimony. Thus, we are not confronted with a situation where the asserted alibi evidence was withheld from the jury, because here the trial court properly admitted the alibi testimony. *1102 Rather, despite allowing the jury to hear the alibi testimony, the trial court denied defense counsel's request to provide the jury with an alibi charge. We agree with the Appellate Division that that was error because a defendant is entitled "to a charge consistent with his version of the facts." State v. Martin, 119 N.J. 2, 16, 573 A.2d 1359 (1990).
The question remains whether the failure to give an alibi charge requires a reversal of defendant's conviction. We conclude that it does not. This Court has long held that the failure to provide a separate alibi charge does not constitute reversible error. See, e.g., State v. Edge, 57 N.J. 580, 590-91, 274 A.2d 42 (1971) (holding failure to give requested alibi charge was harmless); State v. Peetros, 45 N.J. 540, 544-45, 214 A.2d 2 (1965) (holding no reversible error in not giving alibi charge where defendant and dentist testified defendant was at dentist's office in Philadelphia when offense committed in Camden). In State v. Garvin, 44 N.J. 268, 208 A.2d 402 (1965), this Court explained why it was not error to fail to give an alibi change:
There is no need to speak of alibi in such separate terms.... The important thing is to make it plain to jurors that to convict they must be satisfied ... that guilt has been established beyond a reasonable doubt. If a defendant's factual claim is laid beside the State's and the jury understands that a reasonable doubt may arise out of the defense testimony as well as the State's, the jury has the issue in plain, unconfusing terms. If events at the trial should be thought to suggest to the jury that the defendant has the burden of proving he could not physically have committed the crime, then of course the trial court should dissipate that danger by telling the jury that the defendant does not have the burden of proving where he was at the critical time and that evidence offered on that score is to be considered with all the proof in deciding whether there is a reasonable doubt as to guilt.
[Id. at 274, 208 A.2d 402.]
In the present case the evidence was not unduly complicated. The State presented evidence that defendant harbored ill-will against the victim, who was a competitor in the sale of drugs; that defendant and Brown entered the victim's home with their faces covered; that gun shots were fired inside the victim's home; that defendant departed from the victim's home; that defendant later threatened certain witnesses; and that the witnesses refuted their prior statements. On the other side, defendant denied shooting the victim and said he was in the parking lot at the critical time. He presented Smallwood as a witness who placed defendant in the parking lot when shots were fired from inside the victim's home. In the charge to the jury, the trial court instructed that defendant is presumed innocent, has no burden to prove anything, and the State has the burden to prove beyond a reasonable doubt that defendant committed the offense. Later, in the charge on identification, the court said,
[defendant and] Brown, as part of their general denial of guilt, contend the State has not presented sufficient, reliable evidence beyond a reasonable doubt that they are the persons who committed the alleged offense. Where the identity of the person who committed the crime is in issue, the burden of proving that identity is upon the State. The State must prove beyond a reasonable doubt that [defendant and Brown] are the persons who committed the crime.
The defendants have neither the burden nor the duty to show that the crime, if committed, was committed by somebody else. It's not their burden or obligation to prove the identity of any other person. *1103 You must decide, therefore, not only whether the State has proven each and every element of the offense charged beyond a reasonable doubt, but also that the defendant under consideration is the person who committed it.
As the trial court explained in its opinion denying post-conviction relief, "an examination of the beginning of the court's charge on identification in this case and the current model charge on alibi shows that in the context of the allegations here, the failure to charge alibi was ... utterly harmless." We agree.
The trial court's instruction to the jury on identification, reasonable doubt, and the burden of proof made it clear that the prosecution had to prove beyond a reasonable doubt that defendant was present at the scene and committed the offense charged. Although it would have been appropriate for the trial court to have given the requested alibi charge, the failure to do so was clearly harmless error. See Edge, supra, 57 N.J. at 591, 274 A.2d 42.
In short, even if appellate counsel had raised on appeal the trial court's failure to give the jury an alibi charge, the result would not have been different. It was error for the Appellate Division to conclude otherwise.

V.
The judgment of the Appellate Division is reversed and the judgment of the Law Division denying defendant's petition for post-conviction relief is reinstated.
For reversal and reinstatementChief Justice RABNER and Justice LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA-SOTO and HOENS7.
OpposedNone.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] Because the Attorney General's procedural argument was not the subject of the State's petition, we do not address it. State v. Nance, 148 N.J. 376, 385, 689 A.2d 1351 (1997).