**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0932-20

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

MIGUEL A. ORTIZ, a/k/a
MACE ORTIZ, MICHAEL
A. ORTIZ, MIQUEL ORTIZ
and MIQUEL A. ORTIZ,

     Defendant-Appellant.

_____

Submitted February 28, 2022 – Decided August 17, 2022

Before Judges Messano and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Indictment No. 10-06-0497.

Joseph E. Krakora, Public Defender, attorney for appellant (Andrew R. Burroughs, Designated Counsel, on the brief).

Scott A. Coffina, Burlington County Prosecutor, attorney for respondent (Nicole Handy, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Miguel A. Ortiz appeals from an April 6, 2019 order denying his petition for post-conviction relief (PCR) following an evidentiary hearing. The PCR judge entered the order and issued a written decision rejecting a litany of issues raised by defendant pro se and through assigned PCR counsel. On appeal, defendant limits his contentions to two of those points, contending:

POINT I

AS DEFENDANT PRESENTED SUFFICIENT EXCULPATORY EVIDENCE TO CALL INTO QUESTION THE VERDICT AS TO COUNT FOUR, THE PCR COURT ERRED WHEN IT DENIED HIS PETITION FOR A NEW TRIAL.

POINT II

AS DEFENDANT HAS SHOWN THAT HAD HIS ATTORNEY CALLED A REPRESENTATIVE FROM GEICO INSURANCE COMPANY TO TESTIFY AT TRIAL AND THERE WAS A REASONABLE PROBABILITY THAT THE RESULT WOULD HAVE BEEN DIFFERENT, THE PCR COURT ERRED WHEN IT DENIED HIS PCR APPLICATION.

Because the reasons expressed in the PCR judge's written opinion are supported by sufficient credible evidence in the record, we affirm.

A-0932-20

I.

In 2010, a Burlington County jury convicted defendant of multiple second- and third-degree burglaries, attempted burglaries, and related conspiracy and theft offenses, for his part in a string of residential burglaries that took place in eight municipalities over four months in 2009. Defendant was sentenced to an aggregate twenty-year prison term with a ten-year parole disqualifier. The sentence was imposed consecutively to the sentence defendant was serving on an unrelated Bergen County conviction. We upheld defendant's convictions and sentence on direct appeal.[1] State v. Ortiz, No. A-6008-12 (App. Div. Mar. 10, 2016) (slip op. at 3).

The circumstances leading to defendant's arrest and convictions are detailed in our prior decision. Id. at 1-7. Pertinent to this appeal, the thirty-one-count indictment also charged defendant's five accomplices, "including his wife, Beth Mitchell, and Arquimide Pierantony, who pled guilty and was one of the State's principal witnesses at trial."[2] Id. at 3. Referencing Pierantony's testimony, we summarized the burglary ring's modus operandi as follows:

---

[1] We remanded solely for the trial court to determine defendant's jail credits. Ortiz, slip op. at 23.

[2] The trial judge denied defendant's severance motions; the co-defendants' charges were resolved by guilty pleas.

3                                                                    A-0932-20

Defendant and one or more of his co-defendants would meet and search the online phone directory for Burlington County residents with Asian-Indian surnames. The group targeted these addresses based on their belief that people of Asian-Indian descent possessed higher quality jewelry. They would call several homes until they identified five to ten residences at which no one answered. The group would enter the address into MapQuest to get a "live view" of the surrounding area in order "to know [the site's] in-and-out points . . . so if something bad happened, [they] would know where to run to." MapQuest also allowed them to "zoom in" on the houses to see if the windows were alarmed and to identify the best point of entry.

Once the targets were selected, a group of three or four members of the ring would drive to the targeted homes, deciding the roles each would play when they arrived. As they drove, one of the co-defendants would continuously call to confirm that no one was home. If someone answered the phone, the group would move on to the next target. During the planning and execution, the group called the residences and communicated with each other using cell phones with walkie-talkie capabilities.

[Id. at 3-4.]

Pierantony detailed "the specific burglaries and attempted burglaries charged in the indictment." Id. at 5. With regard to the August 17, 2009 Burlington Township burglary, which is relevant to the contentions raised in point II, Pierantony testified he and defendant drove to the home in Mitchell's Mitsubishi Eclipse, while two other accomplices drove in a separate car. On

4

cross-examination however, Pierantony acknowledged the Mitsubishi was involved in a motor vehicle accident in Staten Island, and on August 14, 2009, it was towed to Browns Mills. After viewing photographs of the damaged car, Pierantony conceded the fender was "dented in bad"; the trunk was so damaged it could not be opened; and "the right quarter panel actually [was] touching the floor." Nonetheless, he claimed the car was drivable. He told the jury the car depicted in the photographs was in the same condition as it was during commission of the August 17, 2009 burglary.

As we stated in our prior opinion, however, "portions of Pierantony's testimony" were corroborated by lay witnesses and the investigation undertaken by police. Ibid. For example:

> By checking the caller identification feature at the phones in the burglarized homes, police discovered repeated phone calls made from certain phone numbers. They also learned that a red Santa Fe was registered to defendant's wife, and E-Z Pass records demonstrated that the vehicle exited and entered the New Jersey Turnpike near one of the homes on the date it was burglarized.
>
> [Ibid.]

Police also gathered evidence obtained through communications data warrants, and physical surveillance. Ibid. A search of Mitchell's office revealed "a

A-0932-20

telephone book with pages torn out corresponding to the surnames of several burglary victims." Id. at 6-7.

The State called twenty-eight witnesses at trial, including the burglary victims and detectives assigned to the case. Defendant did not testify but called three police witnesses. At the conclusion of all evidence, the following stipulation was read to the jury:

> On August 14, 2009, Beth Mitchell's 2003 Mitsubishi Eclipse, New Jersey registration MEB-EST was involved in a motor vehicle crash on the Bayonne Bridge near Staten Island Junction, New Jersey.
>
> Ms. Mitchell's insurance company, GEICO Insurance Company for insurance purposes designated the vehicle to be totaled.

After the Supreme Court denied certification, 229 N.J. 16 (2017), defendant filed a timely pro se PCR petition. Assigned counsel thereafter filed a supplemental submission. Following oral argument, the PCR judge, who was not the trial judge, granted defendant's request for an evidentiary hearing, primarily limited in scope to whether defendant's retained trial counsel was ineffective by failing to call certain alibi witnesses at trial.

During the one-day January 9, 2020 evidentiary hearing, defendant testified and presented the testimony of his sister, Rosa Fuentes, regarding his whereabouts on May 29, 2009, when a Moorestown burglary was committed;

and Curtis Edwards, an automobile damage supervisor employed by GEICO, regarding the condition of Mitchell's Mitsubishi Eclipse at the time of the August 17, 2009 Burlington Township burglary. The State called defendant's trial attorney, Kevin Watkins, as its sole witness.

According to Fuentes, defendant was living with her in Brooklyn in 2009, while he made renovations and repairs to her home. She claimed somewhere between 3:30 p.m. and 4:30 p.m., on May 29, 2009, defendant left her home, stating he was meeting his friend, "Ike,"[3] at a cell phone store in Jersey City. Acknowledging "2009 was a long time ago," Fuentes remembered the day because after defendant was arrested "he called [her] and he told [her], 'Do you remember that day I was at your house and Ike called me?'" Fuentes told defendant she recalled the day, "and he sa[id, 'T]his is what's going on, I'm getting arrested for this.'"

Fuentes testified she spoke with Watkins about "what happened." Watkins said he would meet her in Brooklyn, and that he would call her as a witness at trial, but he did neither. Fuentes claimed she was not aware the trial had taken place until her brother was convicted.

---

[3] Defendant later testified to the same account, but referenced his friend's name as Pierantony.

A-0932-20

On cross-examination, Fuentes acknowledged she did not follow up with Watkins. She also claimed defendant had begun work at her home "[i]n the morning" on May 29. When the prosecutor asked: "So, would it surprise you to know that on May 29, 2009, between the hours of 11:43 a.m. and 12:44 p.m., that there were sixteen Sprint direct-connect calls from your brother's phone routed through a Sprint cell tower located less than two miles from [the Moorestown burglary]," Fuentes responded, "That's impossible."

Edwards' testimony was brief. He stated a 2003 Mitsubishi Eclipse owned by Mitchell was towed from the scene of an accident on August 14, 2009 to "Lamon Auto Body in Mount Holly." GEICO deemed the car a "total loss," which meant "the amount of the damage [wa]s more than the actual cash value." According to Edwards, the car was not returned to the owner after the August 14, 2009 accident date. Edwards confirmed his "answers would have been the same" had he testified at trial.

Defendant testified about Watkins' failure to call Fuentes, Edwards, and the cell phone store employee, Jorge L. Castoire,[4] as trial witnesses. For

---

[4] Defendant referred to Castoire as "Cristori." Castoire did not testify at the PCR hearing. His name is referenced in a police report which was marked for identification but not moved into evidence at the hearing. The report was attached to defendant's PCR brief and is included in the appendix on appeal.

A-0932-20

example, defendant contended Castoire was present when he arrived at the cell phone store after 6:00 p.m. on May 29, 2009. He said Castoire "could have testified that [defendant] had no money" because he saw "what [defendant] was driving" and "what [he] was wearing." According to defendant, Watkins said "there's no need to call him because . . . he's a witness for the prosecutor and that he[ would] cross-examine him." Defendant told the PCR judge Castoire was not called by the State at trial.

Defendant also generally criticized Watkins' representation at, and preparation for, trial. Defendant claimed he made it clear he wanted the witnesses or his wife to testify to his alibi and the condition of the car, but "[Watkins] never called any of them."

Admitted to the bar in 1986, Watkins testified about his general recollection of the defendant's case. Watkins believed "it was a difficult case" but "[he] thought [he] could beat it." His initial strategy was "to get [the multi-count indictment] severed." Watkins could not recall specific details about defendant's contentions.

Watkin did not recall whether he ever spoke with Fuentes. Nor did he remember whether defendant asked him to call Castoire. The police report, which stated defendant came to the shop with two men sometime after 6:45 p.m.,

9

when one of the men called the shop, did not refresh his recollection. After reviewing the police report, Watkins noted it was "incomplete." The report ended midsentence and did not reflect the author's name.

As for the allegation he did not timely subpoena the GEICO representative for trial, Watkins suggested there were "some things within those GEICO records, which may not have reflected very well on [defendant]." He believed "the purpose of the stipulation may have been to establish that the car could not have been used [in the August 17, 2009 burglary]."

In his written decision denying PCR, the judge briefly referenced Fuentes' testimony, concluding "her credibility would have been an issue at trial." Regarding Edwards' testimony, the PCR judge noted: "The jury was aware of the condition of the Eclipse," having been shown a photograph of the car and heard the stipulation. The judge further found although "Pierantony testified that the Eclipse had been used in the August [17,] 2009 burglary," the jury nonetheless convicted defendant. The PCR judge concluded defendant failed to "rebut[] the presumption that [his] trial counsel's decision not to call certain witnesses was a reasonable strategic choice based on his assessment of the facts and circumstances of the case." This appeal followed.

## II.

Our review where the court has conducted an evidentiary hearing on a defendant's PCR petition "is necessarily deferential to [the] PCR court's factual findings based on its review of live witness testimony." State v. Nash, 212 N.J. 518, 540 (2013). Where an evidentiary hearing has been held, we should not disturb "'the PCR court's findings that are supported by sufficient credible evidence in the record.'" State v. Pierre, 223 N.J. 560, 576 (2015) (quoting Nash, 212 N.J. at 540). We review any legal conclusions of the PCR court de novo. Nash, 212 N.J. at 540-41.

In seeking post-conviction relief, a defendant must prove counsel was ineffective by a preponderance of the evidence. State v. Gaitan, 209 N.J. 339, 350 (2012). Initially, a defendant must prove counsel's performance was deficient by demonstrating counsel's handling of the matter "fell below an objective standard of reasonableness" and "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 687-88 (1984); State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-part test in New Jersey). Secondly, a defendant must prove counsel's "deficient performance prejudiced the defense." Strickland, 466 U.S. at 687. Prejudice is

11

established by showing a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Thus, to warrant reversal of the challenged conviction, the defendant must establish counsel's performance was deficient and the defendant suffered prejudice. Id. at 687; Fritz, 105 N.J. at 52.

When reviewing claims of ineffectiveness, courts apply a strong presumption that defense counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690; see also State v. Arthur, 184 N.J. 307, 318-19 (2005). "[C]omplaints 'merely of matters of trial strategy' will not serve to ground a constitutional claim of inadequacy . . . ." Fritz, 105 N.J. at 54 (quoting State v. Williams, 39 N.J. 471, 489 (1963)); see also State v. Echols, 199 N.J. 344, 357-59 (2009). "As a general rule, strategic miscalculations or trial mistakes are insufficient to warrant reversal 'except in those rare instances where they are of such magnitude as to thwart the fundamental guarantee of [a] fair trial.'" State v. Castagna, 187 N.J. 293, 314-15 (2006) (alteration in original) (quoting State v. Buonadonna, 122 N.J. 22, 42 (1991)).

"Determining which witnesses to call to the stand is one of the most difficult strategic decisions that any trial attorney must confront." Arthur, 184

N.J. at 320. The decision is generally informed by the testimony expected to be elicited; the possibility of impeachment, both by prior inconsistencies or conflicting testimony by other witnesses; and the witness's general credibility. Id. at 320-21. We must accord substantial deference to trial counsel's decisions on which – if any – witnesses to present, which is overcome only if a defendant shows a strategic decision was based upon a lack of trial preparation. Id. at 323. When a defendant claims his trial attorney failed to call certain witnesses, we ultimately consider "whether there is a reasonable probability that, but for the attorney's failure to call the witness, the result would have been different – that is, there would have been reasonable doubt about the defendant's guilt." State v. L.A., 433 N.J. Super. 1, 15-16 (App. Div. 2013); see also State v. Bey, 161 N.J. 233, 261-64 (1999) (declining to find ineffective assistance of counsel where the proffered testimony was "largely cumulative of evidence revealed by other . . . witnesses" and the "testimony would not have affected the jury's deliberations").

"The quality of counsel's performance cannot be fairly assessed by focusing on a handful of issues while ignoring the totality of counsel's performance in the context of the State's evidence of [the] defendant's guilt." Castagna, 187 N.J. at 314; see also State v. Marshall, 123 N.J. 1, 165 (1991).

A-0932-20

"'[A]n otherwise valid conviction will not be overturned merely because the defendant is dissatisfied with his or her counsel's exercise of judgment during the trial.'" State v. Allegro, 193 N.J. 352, 367 (2008) (quoting Castagna, 187 N.J. at 314).

Having reviewed the record, in view of defendant's contentions and the applicable legal principles, we are satisfied defendant has not demonstrated his trial attorney's failure to call Fuentes, Castoire, and Edwards as witnesses would have changed the outcome at trial. In essence, none of the witnesses could refute the State's forensic evidence, including cell phone and E-Z Pass data.

Had Fuentes testified at trial, her assertion that defendant was working in her home until at least 3:30 p.m., would have been controverted by cell phone evidence that placed defendant in the vicinity of the Moorestown burglary shortly after noon on the day of the burglary. Testimony about Castoire's encounter with defendant later in the day would have been inconsequential.

Although Watkins' testimony was marked by lapses in memory, his unrefuted testimony about his failure to call a GEICO representative revealed portions of the insurance company's records may not have benefited defendant. In any event, Watkins extensively cross-examined Pierantony – and spent considerable time in summation – highlighting the holes in his story. Watkins

14

emphasized the condition of the car, as referenced by the photographs depicting the vehicle, the towing records, and the stipulation between the parties. Moreover, as the State argues, the cell phone evidence adduced at trial demonstrated, on the day of the Burlington Township burglary, three calls were made from defendant's cell phone within a fifteen-minute timespan. Six additional calls from defendant's phone were routed through a cell tower less than a mile from the residence.

In sum, the State's evidence adduced at trial as to all counts, including those pertaining to the burglaries at issue in this appeal, was substantial. Viewing trial counsel's performance in view of the State's evidence, see Castagna, 187 N.J. at 314, we accept the PCR judge's determination that defendant failed to prove both prongs of the Strickland standard. We therefore discern no reason to disturb the judge's findings, which are fully supported by the record and are entitled to our deference. Nash, 212 N.J. at 540.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0932-20