# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1638-22

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

P.R.,

      Defendant,

and

M.J.,

      Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF B.J.,
a minor.

_____

Submitted November 6, 2023 – Decided December 1, 2023

Before Judges Berdote Byrne and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FG-07-0063-22.

Joseph E. Krakora, Public Defender, attorney for appellant (Richard Sparaco, Designated Counsel, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Lisa J. Rusciano, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Julie Elizabeth Goldstein, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant appeals the trial court's termination of his parental rights to B.J. (Jack)[1] following trial and claims ineffective assistance of counsel. Because we find defendant was not prejudiced by his counsel's representation, we conclude defendant fails to demonstrate a prima facie case for ineffective assistance of counsel. We also conclude there exists clear and convincing admissible evidence in the record on which the trial judge found the Division of Child

---

[1] We use pseudonyms to protect the identity of the family members relevant to this appeal pursuant to Rule 1:38-3(d)(12) and for ease of reference. In doing so, we mean no disrespect to the family members.

2                                                                    A-1638-22

Protection and Permanency (Division) proved all four prongs of N.J.S.A. 30:4C-15.1(a) and affirm substantially for the reasons set forth by the Honorable Gary J. Furnari, J.S.C. in his well-reasoned and thorough 65-page opinion.

I.

We will not recite in detail the history of the Division's interactions with defendant. Instead, we incorporate by reference the factual findings and legal conclusions contained in Judge Furnari's decision and summarize the facts relevant to defendant's claim of ineffective assistance of counsel.

Jack was born March 2021, to defendant and P.R. (Pearl). At the time of Jack's birth, defendant was incarcerated for committing domestic violence against Pearl while she was pregnant with Jack. Defendant immediately denied paternity. Jack was removed from Pearl's care at birth due to her mental health issues and placed with his current resource parents. Pearl was unable to care for Jack and voluntarily surrendered her parental rights to Jack prior to trial.

Throughout the litigation, defendant declined to cooperate with the Division and failed to communicate with his appointed trial counsel. He refused to sign documents to secure legal representation and stated he was more concerned with his pending criminal case than the Division's case. When a LabCorp agent arrived at the Essex County Correctional Facility to administer

the court-ordered paternity test, defendant refused to take the test and sign the refusal form. At a subsequent compliance review hearing, defendant declined to explain why he was refusing counsel or the paternity test. He stated he simply did not want to discuss the child.

Despite a court order and despite knowing Jack was in resource care, defendant continued to refuse to take the paternity test on four separate occasions: in April, June, and October 2021, and March 2022. In total, defendant stalled the establishment of paternity for fifteen months, all the while stating he would seek full custody if he was the father. Yet, when the Division asked him for the names of family members who could serve as Jack's potential caregivers, defendant asked why he would give the Division any names if Jack was not his son.

Throughout Jack's short life, defendant met with Jack only eight times, and spent less than nine hours with him. As detailed by Judge Furnari, although defendant stated he wanted full custody of Jack and would care for him once he learned he was Jack's biological father, defendant failed to present an adequate parenting plan, failed to address his untreated mental health and anger management issues, and failed to secure employment or stable housing during the course of Jack's placement in resource care, up through and including the

4

guardianship trial. He missed three psychological evaluations scheduled by the Division, did not avail himself of parental and mental health resources offered to him while in or out of prison, did not obtain steady employment or a permanent residence, and was reincarcerated just prior to trial.

When the Division sought to find relative caregivers for Jack, all efforts failed. Pearl named B.F., Jack's grandmother, but B.F. was unable to care for the child. Pearl's godmother, M.O., was also mentioned, but she declined.[2] In April 2021, Pearl named two more relatives as potential caretakers for Jack: defendant's sister, also named B.F. (Barbara), and her cousin, A.F. Barbara stated she could not financially support Jack at that time. A.F. stated he resided in Texas and could not care for Jack because he and his wife worked long hours. The Division explored Barbara again when defendant volunteered her to serve as Jack's Kinship Legal Guardian,[3] but she failed to remain in contact with the Division and did not complete her KLG assessment.

At trial on January 11, 2023, defendant was incarcerated for an unrelated matter. He was contacted by the court and specifically told to appear, but a

---

[2] The record shows the Division contacted numerous other individuals, who were each ruled out.

[3] N.J.S.A. 3B:12A-1 to -7.

prison official testified defendant declined and refused to sign the court refusal form. Defendant's designated counsel appeared but did not call him to testify. She did not have any expert or lay witnesses testify on defendant's behalf and declined to make an opening statement or object to the State's evidentiary exhibits. She also waived summation. The State called only one witness, the Division caseworker.

In its opinion, the trial court noted defendant and Pearl's relationship was marred by a history of domestic violence, with defendant repeatedly incarcerated over the years—both prior to Jack's birth and thereafter—and subject to prior domestic violence complaints involving his other child, who was the subject of an unrelated action with the Division. After detailing the factual background of the Division's efforts to work with defendant, the court determined the Division clearly and convincingly met each prong of the best interests standard and established defendant's parental rights should be terminated pursuant to N.J.S.A 30:4C-15.1.

This appeal followed.

## II.

### A. Ineffective assistance of counsel claim.

New Jersey affords parents the right to effective counsel in termination proceedings. N.J. Div. of Youth & Fam. Servs. v. M.D., 417 N.J. Super. 583, 609 (App. Div. 2011). Counsel is particularly important "when a parent's 'invaluable right to raise a child' is at stake due to the extreme importance of the litigation," In re Adoption of Child by C.J., 463 N.J. Super. 254, 261 (App. Div. 2020) (quoting In re Adoption of J.E.V., 226 N.J. 90, 94 (2016)), in protecting a fundamental and constitutionally protected interest, N.J. Div. of Youth & Fam. Servs. v. B.R., 192 N.J. 301, 305 (2007). The defendant must establish each of the Strickland v. Washington, 466 U.S. 668 (1984) factors: (1) objectively deficient trial counsel that (2) prejudiced the defendant to the extent that there is a reasonable probability of a different outcome at trial but for trial counsel's errors. M.D., 417 N.J. Super. at 609-10 (quoting B.R., 192 N.J. at 307).

Defendant's "appellate counsel must provide a detailed exposition of how the trial lawyer fell short and a statement regarding why the result would have been different had the lawyer's performance not been deficient." B.R., 192 N.J. at 311. (adopting standard for ineffective representation set forth in Strickland, 466 U.S. at 694 and in State v. Fritz, 105 N.J. 42, 58, (1987)). "[I]f the panel accepts as true appellant's representations regarding the lawyer's shortcomings

A-1638-22

but determines, on the basis of the full record, that the outcome would not have changed, that will be the end of it."  Ibid.

On appeal, defendant argues he was denied effective assistance of counsel based on his trial attorney's failure to present any defense, make any legal argument or objections, and to ensure defendant appeared for trial.  In addition, he claims counsel was ineffective because she "did not object to the court's consideration of [his] absence from trial, which was not evidence in [the] case."  Defendant points to the lack of cross-examination of the Division's only witness.  The only issue defendant asserts his counsel should have addressed on cross-examination relates to the recent amendments to the best interests test codified at N.J.S.A. 30:4C-15.1(a).  The Division's witness "was not questioned with respect to whether the Legislature's findings, declarations, and amendments to the . . . 'best interest' test and the KLG Act were considered . . . ."  He claims counsel should have been aware of the change in the relevant law and advocated appropriately.

Defendant also sets forth a novel interpretation of Rule 1:7-1(b).  According to defendant, Rule 1:7-1(b) "can be interpreted as making closing arguments mandatory because the language only permits the order of the closing arguments, and not its permissibility . . . ."  He claims trial counsel violated Rule

A-1638-22

1:7-1(b) by waiving closing statement. Defendant argues trial counsel "did not do anything to protect his rights and might as well have not been present at all. It is as if defendant was alleged to [have] defaulted and trial counsel conceded that default."

With regards to his absence, defendant contends his trial counsel should have objected to the court's consideration of his absence as a reason to terminate his parental rights, as well as the court's reliance upon hearsay to establish defendant's absence was voluntary. He states, because defendant's absence was treated as a default, trial counsel should have asserted the court was precluded from terminating defendant's parental rights partially on the basis that he did not appear for trial.

Defendant's arguments are belied by the record, which sets forth no basis for his ineffective-assistance-of-counsel claim. Defendant fails to show his trial counsel's performance fell outside the realm of professionally acceptable performance, and, but for this claimed deficiency, there is a reasonable probability he would have prevailed at trial. B.R. requires defendant provide a detailed explanation of how the result would be different with effective counsel. 192 N.J. at 311. Here, defendant provides no certification as to which witnesses his counsel should have called and what evidence should have been addressed.

9

He does not certify he did not understand the proceedings or the consequences of same. Defendant's claim fails because it is a bald assertion. See Strickland, 466 U.S. at 687, 699-700.

Contrary to defendant's claim, the trial court did not consider defendant's absence as evidence that weighed in favor of termination of his parental rights. The only reference the court made of his absence came before its assessment of the best interests standard, and the trial court did not enter a judgment by default.

There is nothing in the record to demonstrate defendant would have achieved a different result absent the claimed deficiencies. Defendant presented no parenting plan to care for Jack and the only alternative he presented, care provided by his sister Barbara, failed factually. Defendant also failed to demonstrate how counsel's failure to advocate for KLG would have caused a different result, because both the Division and court considered and found KLG futile because of Barbara's refusal to participate.

B. Termination of parental rights.

A trial court's decision to terminate parental rights is subject to limited appellate review. N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 605 (2007). Indeed, a family court has "broad discretion because of its specialized knowledge and experience in matters involving parental relationships and the

best interests of children." N.J. Div. of Child Prot. & Permanency v. A.B., 231 N.J. 354, 365 (2017) (alteration in original) (quoting N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 427 (2012)). Where a family court relies upon evidence adduced at a hearing, we "defer to the factual findings . . . because it has the opportunity to make first-hand credibility judgments about the witnesses who appear on the stand; it has a 'feel of the case' that can never be realized by a review of the cold record." N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting N.J. Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 293 (2007)). We defer to the factual findings of family courts "unless they are so 'wide of the mark' that our intervention is necessary to correct an injustice." F.M., 211 N.J. at 427 (quoting E.P., 196 N.J. at 104). Therefore, the family court's decision to terminate parental rights will not be disturbed "when there is substantial credible evidence in the record to support the court's findings." E.P., 196 N.J. at 104.

Defendant argues, with respect to the third prong of the best interests standard, because the legislature removed qualifying language in the KLG statute, which required consideration of KLG when "adoption of the child [was] neither feasible nor likely," the new legislation mandates KLG as a preferred placement over adoption. Defendant's interpretation of the amendments is

unavailing in light of the Supreme Court's recent holding in <u>New Jersey Division of Child Protection & Permanency v. D.C.A.</u>, ___ N.J. ___, ___ (2023) (slip op. at 30-33).

Nor can defendant base his ineffective assistance of trial counsel argument on counsel's alleged failure to apprise the court of the changes in the KLG statute because it is premised on a flawed interpretation. The failure to raise a different argument lacking support in law will not satisfy the standard. <u>See</u> <u>State v. Echols</u>, 199 N.J. 344, 360-61 (2009) (holding trial counsel was not ineffective for failing to raise a losing argument.).

Judge Furnari reviewed the evidence presented at the trial, made factual findings as to each prong of N.J.S.A. 30:4C-15.1(a), and thereafter concluded the Division met by clear and convincing evidence all the legal requirements for a judgment of guardianship as to defendant. The judge's opinion tracks the statutory requirements of N.J.S.A. 30:4C-15.1(a), accords with our well-established case law on the matter, <u>e.g.</u>, <u>D.C.A.</u>, ___ N.J. at ___ (slip op. at 33-35), and is amply supported by the record. We affirm substantially for the reasons Judge Furnari expressed in his cogent written opinion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION