**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2616-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

KENNETH BACON-
VAUGHTERS, a/k/a
KENNETH BACON, KENNY
MIKE, KENNETH
VAUGHTERS, and KENNETH
BACONVAUGHTERS,

     Defendant-Appellant.

_____

Submitted October 8, 2024 – Decided November 22, 2024

Before Judges Sumners and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 09-07-1467.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Andrew R. Burroughs, Designated Counsel, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent (Steven K. Cuttonaro, Deputy Attorney General, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant Kenneth Bacon-Vaughters appeals the Law Division's dismissal of his second petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

I.

In 2011, a jury found defendant guilty of first-degree felony murder, first-degree armed robbery, second-degree possession of a weapon for an unlawful purpose, and second-degree conspiracy to commit armed robbery. The court imposed an aggregate prison sentence of forty years subject to the No Early Release Act, N.J.S.A. 2C:43-7.2. We affirmed defendant's conviction and sentence on his direct appeal. State v. Bacon-Vaughters, No. A-0583-11 (App. Div. Feb. 25, 2013) certif. denied, 216 N.J. 5 (2013).

Defendant's first PCR petition was denied on September 20, 2015 without an evidentiary hearing. We affirmed the denial. State v. Bacon-Vaughters, A-1754-15 (App. Div. Sept. 15, 2017) certif. denied, 232 N.J. 367 (2018).

Defendant filed his self-represented second PCR petition six years later on October 12, 2021, alleging ineffective assistance of his first PCR counsel and trial counsel. After counsel was assigned to represent him, defendant argued first PCR counsel was ineffective for not arguing that trial counsel and appellate counsel failed: (1) to argue that defendant's "October 8, 2009 proffer statement [to police] should have been admitted into evidence at trial under the completeness doctrine"; and (2) "to object to the [trial court's] limiting instruction provided to the jury regarding the two statements by the victim that Kenny Mike shot him."

On March 7, 2023, after oral argument, the PCR judge, who also presided over defendant's trial, denied defendant's second PCR petition for reasons set forth from the bench. The PCR judge concluded his claims were procedurally barred based on Rules 3:22-12(a)(2), 3:22-4(b), and 3:22-5, and substantively without merit.

Before us, defendant contends in his counseled brief:

> POINT I
>
> THE PROCEDURAL BAR IN THIS CASE SHOULD BE RELAXED IN THE INTEREST OF JUSTICE AND FUNDAMENTAL FAIRNESS AS DEFENDANT PRESENTED A COGNIZABLE CLAIM THAT INEFFECTIVE ASSISTANCE OF

COUNSEL DENIED HIM A FAIR TRIAL AND A COMPLETE DEFENSE.

(1) The interests of justice and fundamental fairness require relaxation of procedural bars.

(2) Defendant has shown that first PCR counsel was ineffective by failing to argue that he was denied effective legal representation when his trial attorney failed to move into evidence his October 8, 2008 statement that could have defeated the felony murder charge.

(3) First PCR counsel failed to argue that trial counsel was ineffective by failing to ensure that the jury had been properly instructed as to the alleged statements made by decedent.

POINT II

AS THERE ARE GENUINE ISSUES OF FACT IN DISPUTE, AN EVIDENTIARY HEARING IS REQUIRED.

Defendant's pro se supplemental brief merely amplifies these same points.

He argues:

POINT I.

THE TRIAL COURT ERRED WHEN IT DENIED PETITIONER'S PCR WITHOUT AN EVIDENTIARY [HEARING] VIOLATING PETITIONER'S RIGHT TO DUE PROCESS, RIGHT TO A FAIR TRIAL[,] [AND] RIGHT . . . TO EFFECTIVE ASSISTANCE OF COUNSEL[L.]

(1) PETITIONER'S HAS ESTABLISHED A PRIMA FACI[E] CASE FOR INEFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL FAILED TO PRESENT THE PETITIONER'S OCTOBER 8, 2009 STATEMENT; PETITIONER IS ENTITLED TO AN EVIDENTIARY HEARING[.]

(2) TRIAL COURT ERRED WHEN IT DENIED THE PETITIONER AN EVIDENTIARY [HEARING] AFTER ESTABLISHING A PRIMA [FACIE] CASE OF INEFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL FAILED TO ENSURE THE PROPER INSTRUCTION TO JURY SURROUNDING STATEMENTS MADE BY THE [DECEDENT].

POINT II.

THE TRIAL COURT ERRED WHEN IT FAILED TO RELAX PROCEDURAL BARS GOVERNED BY RULE 3:22-4(B)'S, RULE 3:22-5'S AND RULE 3:22-12(A)2A'S IN THE INTEREST OF JUSTICE AND FUNDAMENTAL FAIRNESS AS PETITIONER PRESENTED A COGNIZABLE CLAIM THAT INEFFECTIVE ASSISTANCE OF COUNSEL DENIED HIM A FAIR TRIAL AND RIGHT TO A COMPLETE DEFENSE VIOLATING PETITIONER'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, RIGHT TO DUE PROCESS, AND RIGHT TO A FAIR TRIAL

Having considered the record, the parties' arguments, and the applicable legal principles, we affirm the denial of defendant's second PCR petition.

II.

The circumstances of defendant's arrest and convictions are well known by the parties and summarized in our prior opinion denying defendant's direct appeal; thus, we only discuss the facts and trial court proceedings necessary to decide this appeal.

On the night of March 11, 2008, Nathaniel Wiggins, who sold marijuana out of his Eatontown apartment, was fatally shot at his home. Earlier that day, defendant was at work when his friends, LaShawn Fitch, Aron Pines,[1] and Ian Everett discovered a gun on the ground near Everett's house after an unknown individual discarded it there. Later that afternoon, Fitch and Aron discussed robbing someone they referred to as the "weed man." At some point, Aron left to pick up defendant, known as "Kenny Mike," from work.

Phone records indicate that at approximately 9:00 p.m., Wiggins received a phone call from Aron's cellphone, after which Wiggins informed his girlfriend Faith Montanino of the caller and his friends, referring to them as "younger kids from Neptune," who wanted to buy a large quantity of marijuana. At 9:37 p.m., defendant sent his girlfriend the following text message: "Baby, I have to

---

[1] To avoid confusion, we will refer to Aron Pines and his brother, Tahj Pines, by their first names.

straight sumthings out."[2]  About one minute later, defendant sent another text message to a friend:  "iam bout to do sum real live gangsta shit."  Willis immediately texted back:  "wat u b0uta d0?"  Defendant responded:  "Rob this nigga I hit u wen iam done."

Around 10:00 p.m., Wiggins and Montanino were in his apartment when they heard a knock at the door.  After opening the door, Wiggins was shot. During Montanino's subsequent 911 call to report the shooting, Wiggins was heard saying Kenny Mike was the shooter.  Eatontown police officer Brett Paulus was the first to arrive at the scene.  Wiggins grabbed his leg and, unprompted, said he was "dying" and that "Kenny Mike shot me."  Wiggins repeated Kenny Mike's name several times and told Officer Paulus his assailant was from "Neptune."  Hours later, Wiggins died at the hospital.

The following day, defendant was questioned by police and denied any involvement in the shooting.  Defendant was arrested two weeks later.  After waiving his <u>Miranda</u>[3] rights, defendant gave a statement describing his role in the robbery.  He claimed Aron called Wiggins to set up the drug purchase as part of an impromptu plan to rob the victim of his marijuana, and then drove Tahj,

---

[2]  These text messages are exactly as they appear in the record.

[3]  <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

A-2616-22

Fitch, and defendant to Wiggins's apartment. Defendant claimed Tahj planned the robbery, stating:

> [Tahj] just said boom you are gonna knock and I'm a come in right behind you and somebody put the gun to him—I mean I might just pistol whip him to let him know we were serious and that's it. I told him make sure that the gun is not loaded and he said alright it's not. Make sure the gun's not loaded, he said it's not.

Defendant said Tahj carried a silver revolver and as soon as defendant entered Wiggins's apartment, he heard a shot.

Over a year and a half later, defendant gave the October statement, equivocating on when exactly he saw the gun. He told investigators that after he got off work Aron and Fitch told him they found a gun and planned to rob Wiggins. He also stated the first time he saw the gun was "when, after [Tahj] shot him[,] I looked at Nate, I looked back at Tahj he had the gun, it was, it was silver, black handle." However, when asked if he thought Tahj had the gun on the way to Wiggins' apartment, defendant responded, "I think Tahj Pines had the gun the whole time, even I think, from my gut feeling I feel as though they probably found the gun, called Tahj Pines up." The October statement was not offered to be admitted at trial.

At trial, the court admitted Wiggins' statement "Kenny Mike shot me" on two grounds. As for the statement's recording in the 911 call, the court

determined it was admissible as non-hearsay because under N.J.R.E. 801(c) it was not admitted to prove the truth of the matter asserted but to establish that defendant was at the shooting. Before the recording was played before the jury, the judge instructed the jury:

> Prior to the 9-1-1 call being played for you to hear, I should indicate that on there you will hear some statements, you will hear a dying declaration of Nathaniel Wiggins, and you'll hear conversations of the officers at the apartment on the night of March 11, 2008. Those statements had previously been ruled to be admissible in evidence . . . at an earlier hearing. The dying declarations are statements of Mr. Wiggins are being utilized among other reasons by the State to establish that [defendant], was at the scene of the shooting.

The court gave a similar instruction before Officer Paulus testified and during the jury instructions. As for Officer Paulus' testimony about what Wiggins said, the court determined it was a dying declaration under N.J.R.E. 804(b)(2). The court noted that Wiggins sensed he was dying and did so a few hours later.

### III.

"We review a judge's decision to deny a PCR petition without a hearing for abuse of discretion." State v. Vanness, 474 N.J. Super. 609, 623 (App. Div. 2023) (citing State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013)). Because the PCR judge did not hold an evidentiary hearing, we review de novo

both the factual inferences drawn by the judge from the record and the judge's legal conclusions. State v. Aburoumi, 464 N.J. Super. 326, 338 (App. Div. 2020).

To establish a prima facie claim of ineffective assistance of counsel, the defendant is obligated to show that counsel's performance was deficient, and the deficiency prejudiced his right to a fair trial. Strickland v. Washington, 466 U.S. 668, 687 (1984); State v. Fritz, 105 N.J. 42, 48-50 (1987). Under the first prong, defendant must demonstrate "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Under the second prong, defendant must show "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Ibid. There must be a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "Mere satisfaction with a 'counsel's exercise of judgment' is insufficient to warrant overturning a conviction." State v. Nash, 212 N.J. 518, 542 (2013) (quoting State v. Echols, 199 N.J. 344, 358 (2009)).

Rule 3:22-4(b) provides a second or subsequent PCR petition "shall be dismissed" unless it is timely under Rule 3:22-12(a)(2) and alleges "a prima

facie case of ineffective assistance of counsel that represented the defendant on the first or subsequent application for post-conviction relief."  A second or subsequent petition must be filed within one year after the latest of:

> the date on which the factual predicate . . . could not have been discovered earlier through the exercise of reasonable diligence . . . [or] the date of the denial of the first or subsequent application for post-conviction relief where ineffective assistance of counsel that represented the defendant on the first or subsequent application for post[-]conviction relief is being alleged.
>
> [R. 3:22-12(a)(2)(B)-(C).]

Rule 1:3-4(c) also specifically provides that "[n]either the parties nor the court" may enlarge the time specified for the filing of PCR petitions under Rule 3:22-12.  Although time limitations are not absolute and may be waived to prevent fundamental injustice, this court must view our rules in light of their dual purposes:  "to ensure . . . the passage of time does not prejudice the State's retrial of a defendant. . . . [and] 'to respect the need for achieving finality.'"  State v. DiFrisco, 187 N.J. 156, 166-67 (2006) (quoting State v. Mitchell, 126 N.J. 565, 576 (1992)).  Moreover, Rule 3:22-12(b) provides "[t]hese time limitations shall not be relaxed, except as provided herein."  See also State v. Jackson, 454 N.J. Super. 284, 293 (App. Div. 2018).  Moreover, a defendant is generally "barred from presenting a claim on PCR that could have been raised at trial or on direct

11

appeal . . . or that has been previously litigated."  <u>Nash</u>, 212 N.J. at 546; <u>R.</u> 3:22-5.

IV.

A.

Defendant argues, citing to <u>State v. Hannah</u>, 248 N.J. 148 (2021), that the PCR judge erred when he found defendant's second PCR petition was procedurally barred.  Defendant maintains <u>Hannah</u> represents our high Court's evolved reasoning about how to handle procedural bars of subsequent PCR petitions, and that "<u>any</u> procedural bars" may be relaxed in the interests of justice and fundamental fairness.

Proceeding to the merits of his claim, defendant argues his trial counsel should have moved to admit into evidence the October statement under N.J.R.E. 106 and the rule of completeness.  Trial counsel's failure to do so, argues defendant, was prejudicial error as defendant was charged with felony murder with armed robbery as the predicate crime.  Under New Jersey's felony murder statute, it is an affirmative defense if the defendant, inter alia, had "no reasonable ground to believe that any other participant" was armed with a deadly weapon. N.J.S.A. 2C:11-3(a)(3)(c).  Defendant argues the introduction of the October statement would have called into doubt whether he knew his co-conspirator was

12

armed and, taken together with the fact that he was at work when the conspiracy to rob Wiggins was hatched and the gun used in the shooting was found, would have amounted to a reasonable defense to felony murder. Defendant argues first PCR counsel's failure to raise this issue was ineffective assistance.

Defendant next contends first PCR counsel was ineffective for not arguing trial counsel was "ineffective by failing to ensure that the jury had been properly instructed about statements allegedly made by [Wiggins]." As explained above, there were two statements admitted at trial referencing "Kenny Mike" as the shooter: (1) the 911 call played to the jury, wherein Wiggins can be heard stating "Kenny Mike" shot him; and (2) Wiggins' declaration to Officer Paulus that "Kenny Mike shot me." Though the latter was admitted under the dying declaration exception and the former not for its truth but to establish defendant's presence, defendant argues the trial judge erroneously referred to both statements as "dying declarations" in the jury instructions. Had PCR counsel raised this contention, defendant asserts his PCR petition would have been granted.

The State emphasizes defendant waited over six years to file his second PCR, and that Hannah "has no application to any construction of [Rule] 3:22-12(a)(2)(c)." The State also contends defendant's jury instruction claim is

"separately and independently barred by [Rule] 3:22-5," as it was already adjudicated in his direct appeal.

Regarding the October statement, the State argues trial counsel's "performance was not deficient" and there was no prejudice, because admission of the statement in its entirety would have made defendant's conviction more likely, not less. As for defendant's argument concerning the "Kenny Mike" jury instruction, the State notes defendant was not tried as the shooter and the October statement was introduced to establish defendant's presence at the scene, which was not disputed at trial. Significantly, the State argues "this instruction held no capacity to prejudice defendant" where another "virtually identical statement was admitted as a dying declaration."

## B.

Defendant's reliance on Hannah that the procedural bars applied by the PCR judge may be relaxed in the interest of justice and fundamental fairness is misplaced. In Hannah, the Supreme Court recognized that "our [rules] governing [PCR] petitions and proceedings do not render our courts 'powerless to correct a fundamental injustice.'" 248 N.J. at 178 (quoting Nash, 212 N.J. at 547). The Court explained that "[a] fundamental injustice occurs 'when the judicial system has denied a defendant with fair proceedings leading to a just outcome.'" Id. at 179 (quoting

Nash, 212 N.J. at 546) (internal quotation marks omitted). A fundamental injustice was found in Hannah because "critical evidence was withheld from the jury that supported [Hannah's] third-party-guilt defense." Id. at 155. Hannah did not overrule Jackson but rather addressed a unique circumstance involving the defendant's "fourteen-year odyssey" through the PCR process with a complex procedural history to correct what it viewed as fundamental injustice that denied the defendant a fair trial. Id. at 155, 190.

We conclude defendant has not demonstrated that rare case requiring relief from the procedural limitations imposed on second or subsequent PCR petitions under Rule 3:22-12. Defendant's case is far afield from the facts and "tortuous" procedural history in Hannah. See id. at 175. Moreover, Hannah dealt with a PCR petition "based on newly discovered evidence," possibly "exculpatory" or "critical" evidence. Id. at 168, 155.

Here, defendant does not present any evidence demonstrating relaxation of the filing deadlines is required to avoid injustice. We therefore agree with the PCR judge that defendant's second PCR petition was procedurally barred. Applying Rule 3:22-12(a)(2)'s time limitations to second or subsequent PCR petitions, the judge rejected defendant's claim that he was not aware the October statement could have been introduced into evidence until recently, finding it would need more than a "self-

serving affidavit from the [d]efendant" to grant an evidentiary hearing on that basis. Contrary to defendant's claim, the court rule stated the choice to not offer the October statement was "a tactical decision made at the time because there were statements in there . . . [that] would have hurt . . . [d]efendant," and "[t]hose things were known to . . . [d]efendant at the first PCR." Thus, the factual predicate was not new.

C.

Assuming defendant's contention regarding the October statement was not procedurally barred, he fails to show how his first PCR counsel was ineffective for not arguing he was prejudiced by trial counsel's failure to admit the statement into evidence. Taken in its entirety, the October statement is not helpful to defendant, and it was sound trial strategy not to introduce it. See State v. Gary, 229 N.J. Super. 102, 116 (App. Div. 1988) (holding a defense attorney's trial strategy is generally not second-guessed in a PCR proceeding); Fritz, 105 N.J. at 54 ("[C]omplaints 'merely of matters of trial strategy' will not serve to ground a constitutional claim of inadequacy") (internal quotations and citation omitted). Defendant admits in the statement that Aron and Fitch came to his house at approximately 9:30 p.m. and told him about the gun: "He just, he just tells me, tells about the gun, once he says something about the gun about how they retrieved the gun. . . . They got the gun, he said you wanna rob [Wiggins]?"

16

Defendant also described his reaction when they picked up Tahj right before the robbery, and Tahj put something in the trunk: "So to me I'm assuming right now that it was the gun or he had weed on him or something."

Defendant solely relies upon the part of the statement where he says he only saw the gun after shots were fired, but the State need not prove when he first saw it, but whether there were "no reasonable grounds" to believe Tahj or Fitch was armed at the time of the robbery. Yet, in its entirety, the October statement is damaging for defendant because he admits his co-conspirators told him the gun was found earlier that day; reiterates he knew they were on the way to rob Wiggins; and says he thought Tahj stored the gun in the trunk during the ride to Wiggins' apartment. Though defendant's two statements indicated he had not seen the handgun before Tahj fired the fatal shots, the PCR judge correctly reasoned "[i]t wouldn't have been one portion of the statement; it would have been the entire statement" in evidence, which would not have helped defendant. Consequently, defendant cannot show there was a reasonable probability the statement would have altered the verdict in his favor, and thus did not satisfy the Strickland/Fritz test.

D.

17

Assuming defendant's contention that the limiting instructions on Wiggins' statements that Kenny Mike shot him was not procedurally barred, he fails to show first PCR counsel was ineffective for not arguing trial counsel was ineffective for failing to challenge the instructions. Wiggins' statements were introduced to establish defendant's presence at the scene, not to advance a theory of him as the shooter. The trial court's mistaken reference to admitting both statements as dying declarations had no meaningful impact given the statements were not misleading relative to that purpose, as the limiting instruction expressly conveys how the jury should consider the statements. Because trial counsel's failure to object was not deficient, first PCR counsel was not ineffective for not making it a PCR claim.

Assuming first PCR counsel was deficient, defendant cannot show the deficiency prejudiced the outcome of this case. Importantly, Officer Paulus introduced the dying declaration made to him by Wiggins, who said "Kenny Mike shot me." Though not admitted as a dying declaration, the 911 call merely amplified Wiggins' statement introduced through Officer Paulus, as it memorialized the same voice espousing the same words. Had the jury been properly instructed on the exact evidentiary basis for admitting the 911 recording, or had it even been excluded from evidence, there is no reasonable

18

probability the jury would have viewed defendant's involvement in Wiggins' murder differently, especially because defendant's presence at the scene was not in issue.

V.

Defendant argues an evidentiary hearing was warranted as there was a genuine issue as to first PCR counsel's performances that lay outside the record, and he has raised a prima facie case of ineffective assistance that warrants a testimonial hearing. In his pro se brief, defendant argues he has established this by a preponderance of the evidence. Preciose, 129 N.J. at 459. We disagree.

An evidentiary hearing for a PCR claim should be held when there is (1) a prima facie case in support of PCR relief, such as ineffective assistance, (2) the court determines there are material issues of disputed fact that cannot be resolved by reference to the existing record, and (3) the hearing is necessary to resolve the defendant's claims for relief. R. 3:22-10(b). To establish a prima facie claim, defendants must "demonstrate a reasonable likelihood that his or her claims . . . will ultimately succeed on the merits." Ibid.; see also Preciose, 129 N.J. at 462.

For all the reasons detailed above, defendant has not demonstrated that he is reasonably likely to succeed on the merits of his ineffective assistance claims

against PCR counsel. Moreover, defendant has not shown what value such a hearing would add to the already-voluminous trial and appellate record. We therefore discern no abuse of discretion by the PCR judge in denying defendant's petition without an evidentiary hearing. See Preciose, 129 N.J. at 462-63.

To the extent we have not addressed any remaining arguments, we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION