**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0234-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ALEJANDRO LOPEZ,
a/k/a ALEX LOPEZ,

    Defendant-Appellant.

_____

Submitted April 29, 2025 – Decided August 1, 2025

Before Judges Sumners and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 16-11-0792.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Steven M. Gilson, Designated Counsel, on the brief).

William A. Daniel, Union County Prosecutor, attorney for respondent (Melissa A. Spagnoli, Assistant Prosecutor, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant Alejandro Lopez appeals from an order denying his petition for post-conviction relief (PCR) based on ineffective assistance of counsel (IAC). The PCR judge found defendant raised a prima facie case of IAC as to certain claims and ordered an evidentiary hearing. The PCR judge denied the remainder of defendant's contentions without a hearing. After completion of the hearing, the judge denied defendant's PCR petition in full. After our review of the record and applicable legal principles, we affirm based on the reasons set forth in the thorough written decision of the PCR judge.

I.

Defendant along with co-defendants Rodney Rosario, and Mayrenid Hidalgo Bautista were convicted of numerous crimes surrounding the November 23, 2013 murder of Jose Luis Disla Cordero. State v. Lopez, No. A-3208-18 (App. Div. June 30, 2021) (slip op. at 1-2). Rosario and defendant were convicted of first-degree murder; conspiracy to commit murder; first-degree felony murder; second-degree burglary; second-degree possession of a weapon for an unlawful purpose; second-degree unlawful possession of a weapon; two counts of third-degree criminal restraint; and two counts of fourth-degree

2

aggravated assault. Hidalgo-Bautista was convicted of the one charge she was

indicted, first-degree conspiracy to commit murder.

The background facts to the convictions are as follows:

> Miguel Angel Rosario Mejia, Rosario's cousin, participated in the crime, and gave a statement to police implicating himself and the others. He entered into a plea agreement with the State in exchange for his testimony.
>
> The trial testimony, including Mejia's, established that co-defendants and the victim were in the business of selling drugs. Believing that Cordero had stolen jewelry, drugs, money, and a handgun from them, they decided to kill him and secure the return of their belongings.
>
> [Defendant], Rosario, and Mejia drove Hidalgo-Bautista's car from the rendezvous point to Cordero's apartment. Torres, the victim's acquaintance, was sitting in the victim's car parked in front of the victim's home when the group arrived. Rosario carried a 9 mm semi-automatic handgun; Mejia a .357 caliber revolver; [defendant] a .38 caliber revolver. They forced Torres to exit the vehicle at gunpoint and to open the door to the apartment. Once inside, they ordered Torres and the victim, along with two other men—Wallington Mosquera and Eduardo Ramos—to stand against a wall. As the co-defendants searched the occupants, a struggle broke out during which Rosario ordered Mejia to shoot the victim in the foot. [Defendant] then shot Cordero several times, and Rosario shot Cordero in the head.
>
> The men then called Hidalgo-Bautista to pick them up in a taxi. Rosario and Mejia eventually fled the country. Hidalgo-Bautista asked her sister to get

3

Rosario's passport from his apartment and send it in a taxi; Hidalgo-Bautista transferred $200 to the men via Western Union. Hidalgo-Bautista kept the weapons, intending to send them to the Dominican Republic. Rosario and Mejia were eventually arrested in Mexico and extradited—causing the years-long delay in the scheduling of the trial.

. . . .

Mejia testified at trial in line with his earlier statements that he, the co-defendants, and the victim, were involved in drug distribution. The issue of their involvement in an ongoing drug distribution scheme had been the subject of Rule 104 hearings. The trial judge determined, after applying the standards for admission under N.J.R.E. 403 and 404(b), that the testimony would be admitted as establishing motive.

At trial, Mejia referred to Rosario as "the boss" of the drug enterprise, which he had not done earlier. Although the judge did not specifically rule on whether Mejia could testify about Rosario's role in the group, he did in general terms decide he would allow Mejia to fully explain his own relationship with the others and the group's relationship with the victim, namely, that they were all involved in the drug trade and had access to weapons.

Several days after the murder, Mosquera and Ramos, the two men who were stood against the wall at gunpoint during the incident, provided statements. Mosquera initially claimed he did not know who shot the victim, but later that night, after speaking to officers off the record, he made a second statement in which he named Rosario as one of the shooters, but claimed not to know the names of the others. The officer who testified was not the officer who spoke to Mosquera off

4

the record, although she had been in the area. She was present during the recorded interviews. Mosquera's statement implicating Rosario was introduced at trial.

[Id., slip op. at 3-7.]

Defendant was sentenced to fifty-five years subject to the No Early Release Act, N.J.S.A. 2C:43-7.2 (NERA), on the murder. The trial judge imposed the following concurrent terms: a seven-year NERA term for burglary and an eight-year Graves Act term, N.J.S.A. 2C:43-6.2, for unlawful possession of a firearm. He also imposed a four year consecutive term to the murder sentence on the criminal restraints, although the two terms were to be served concurrent to each other. Despite the merger of the conspiracy, felony murder, possession of a weapon for an unlawful purpose, and aggravated assaults with a firearm, the judge sentenced the offenses individually. He imposed seventeen years for conspiracy to commit murder, fifty-five years for felony murder, eight years for possession of a weapon for an unlawful purpose, and one year for both aggravated assault with a firearm convictions.

Defendant appealed and we affirmed his convictions and sentences but remanded for the amendment of the judgment of conviction to delete sentences on the merged convictions and to correct the judgment to show the criminal restraint convictions, while consecutive to all counts, should run concurrently

with each other.  Id. slip. op. at 1.  Additionally, the judgment of conviction was to reflect an aggregate term of fifty-nine years.  Id., slip. op. at 43.  Defendant's petition for certification was denied.  State v. Lopez, 249 N.J. 62 (2021).

Defendant's first PCR petition was denied without prejudice because it did not specify the facts upon which the claims were based.  Subsequently, defendant filed an amended PCR petition along with a certification addressing the factual basis of his claims.  Defendant's amended PCR petition asserted trial counsel provided IAC by failing:  (1) to investigate Miguel Adames and Jonathan Garcia, as potential witnesses for the defense; (2) to adequately cross-examine Mejia at trial; (3) to file a motion to sever; (4) to request "false in one, false in all" and third-party guilt jury instructions; (5) to request a mistrial; (6) to request charges of lesser included offenses; and (7) to investigate recordings of alleged witness interviews.  The judge held argument and entered an order and written opinion which granted defendant an evidentiary hearing on limited issues surrounding trial counsel's failure to interview Adames and Garcia.  The PCR judge stated an evidentiary hearing was required to determine "what was discussed with [defendant] and what the reasons there were for any decision not to call Adames or Garcia or pursue Mejia with regard to the complaints of

Adames and Mr. Cordero." The remainder of defendant's contentions were denied without an evidentiary hearing.

At the evidentiary hearing, the victim's nephew Jonathan Garcia testified that he lived with Cordero in his apartment, though he had moved out prior to the homicide. Garcia testified he overheard several confrontations between Rosario and the victim. He stated that in October or November of 2013, he overheard Rosario arguing with the victim about "tickets" and, during that argument, he saw Mejia point a gun at the victim and threaten to kill him. Garcia further testified that Rosario stopped Mejia from killing the victim, telling him the victim first had to pay for the "tickets" and then they would kill him. Garcia stated that "tickets" meant drugs.

Garcia said that in October and November 2013, he believed Mejia was stalking Cordero to kill him. During that time, he observed Mejia outside of Cordero's apartment on at least four occasions and believed Cordero's life was in danger. He stated that Cordero warned him not to "hang out" with Rosario and Mejia. Garcia also testified that on several occasions co-defendant Rosario accused the victim of being a snitch. Garcia stated that he recalled Rosario saying "[h]e didn't care how much money he had to pay to find out the truth about [the victim's] involvement with police" and threatened to kill the victim if

7

A-0536-24

he found out the victim was a "snitch." Garcia claimed that Rosario allegedly had a recording of the victim cooperating with the police but at the time he did not know it was about his drug business.

Garcia also said he told detectives that Rosario was complaining about his girlfriend getting stopped by police and receiving seven tickets. Later, Garcia clarified that Rosario's girlfriend only was stopped once and Rosario only was stopped once. Garcia stated Rosario blamed the victim for the motor vehicle summonses and for being stopped by police.

Garcia also testified that he was aware that Codero went to the Plainfield Police Department in September of 2013 to report the threats against his life. Garcia admitted that he was not present and all the information he had in this regard was told to him by Cordero. Garcia acknowledged that he had seen both Rosario and Mejia with guns. Garcia knew Rosario to be in charge but "Cain" (a/k/a Mejia) says whatever Rosario says.

Adames, Cordero's friend, also testified at the evidentiary hearing. Adames testified that he went to the Plainfield Police Department with Cordero in September 2013 to report that Rosario and Mejia threatened to kill them. Adames stated that Rosario and Mejia were putting pressure on Cordero to kill him. Adames stated that Rosario and "Cain" wanted to kill him because he got

8

into a dispute with them about their drug activity at 609 Madison, an apartment registered to Adames' father. Adames further explained that Rosario and Mejia wanted to kill him because they blamed him for taking items from Rosario's and Mejia's apartment. Adames testified that he saw Rosario and Mejia with guns and he saw Mejia point a gun at Cordero's head on one occasion.

Defendant's trial counsel also testified at the hearing. Counsel testified he was aware that defendant went to the Latin Bar with the co-defendants but there was no plan to kill the victim, and that defendant was surprised when the murder occurred. Counsel also explained that his defense strategy included attacking Mejia's credibility and arguing that Mejia was the actual shooter. Defendant's trial attorney also acknowledged that he had an affirmative duty to fully investigate a case and conduct a thorough review of discovery. He also explained that it was his general practice to go through the discovery list, look at the items, and make sure he had everything that was listed. Counsel also testified he would review every page that was provided and listen to every DVD in a case like this.

Although counsel did not have a specific recollection of receiving Adames' statement and Garcia's statement, he acknowledged the letter that itemized discovery included the statements and testified that he would have

9

requested a copy of any items if he believed they were missing. Additionally, counsel testified that he would have advised the court if he needed more time to review discovery and that he only would be ready to proceed to trial if he had a "firm grip" on the discovery. When asked about what he thought "tickets" meant, counsel responded that based upon his experience, he suspected that the term referred to "drugs." Lastly, counsel testified that he did not receive any recorded statements from Adames or Garcia and was unaware of any such statements. He noted that, had he known about these statements, his cross-examination of Mejia would have been different.

After the evidentiary hearing, the PCR judge entered an order denying defendant's PCR petition based on reasons set forth in a written decision. On appeal, defendant challenges the judge's order raising the following point:

> POINT I
>
> DEFENDANT'S CONVICTIONS MUST BE REVERSED BECAUSE TRIAL COUNSEL'S FAILURE TO REVIEW/UTILIZE DISCOVERY RESULTED IN HIS NOT INVESTIGATING JONATHAN GARCIA AND MIGUEL ADAMES AS POTENTIAL EXCULPATORY WITNESSES AND/OR HIS NOT ADEQUATELY CROSS-EXAMINING MIGUEL ANGEL ROSARIO MEJIA, THE STATE'S MAIN WITNESS.

In addition, defendant's self-represented brief asserts supplemental points contending the PCR judge's denial of his petition was error. Specifically, defendant claims trial counsel was ineffective by failing to (1) file a motion to sever; (2) request "false in one, false in all" and third-party guilt jury instructions; (3) request a mistrial; (4) request charges of lesser included-offenses; and (5) investigate recordings of alleged witness interviews.

## II.

"[PCR] is New Jersey's analogue to the federal writ of habeas corpus." State v. Pierre, 223 N.J. 560, 576 (2015) (quoting State v. Preciose, 129 N.J. 451, 459 (1992)). "[PCR] provide[s] a built-in 'safeguard that ensures that a defendant [is] not unjustly convicted.'" State v. Nash, 212 N.J. 518, 540 (2013) (quoting State v. McQuaid, 147 N.J. 464, 482 (1997)).

To establish a claim of IAC, a defendant must satisfy the two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984): (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) "the deficient performance prejudiced the defense." Strickland at 687; State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-prong test in New Jersey).

When a PCR judge does not conduct an evidentiary hearing, we review

11

the denial of a PCR petition de novo. State v. Harris, 181 N.J. 391, 420-21 (2004); State v. Lawrence, 463 N.J. Super. 518, 522 (App. Div. 2020). We apply a deferential standard of review to an appeal of a denial of a PCR petition following an evidentiary hearing. State v. Pierre, 223 N.J. 560, 576 (2015); State v. Nash, 212 N.J. 518, 540 (2013). The factual findings made by a PCR judge will be accepted if they are based on "sufficient credible evidence in the record." Pierre, 223 N.J. at 576 (quoting Nash, 212 N.J. at 540). In contrast, interpretations of the law are "reviewed de novo." Id. at 576-77 (quoting Nash, 212 N.J. at 540-41).

## III.

### A.

Initially, we address defendant's arguments claiming the PCR judge erred by denying the points in his petition which were the subject of the evidentiary hearing. Defendant first asserts the PCR judge erred because he focused on Garcia's and Adames' lack of credibility, while ignoring alleged deficiencies by trial counsel. We disagree. After our review of the record, we conclude the PCR judge thoroughly assessed the testimony of all witnesses, including trial counsel's testimony concerning the alleged deficiencies raised by defendant and sufficient credible evidence existed in the record to support the judge's finding.

12

Defendant also contends that trial counsel was ineffective for failing to investigate and present the exculpatory testimony of Adames and Garcia and the PCR judge erred by concluding otherwise. Defendant argues these witnesses would have provided testimony supporting his defense that he was not aware of a plan to rob and kill the victim. Specifically, defendant alleges that these witnesses would have contradicted the testimony of one of the State's main witnesses, Mejia. He asserts this testimony would have established that the motive for killing Cordero was not a robbery, but rather Rosario finding out that Cordero was cooperating with law enforcement. Defendant contends this testimony would have shown he was unaware of Rosario's and Mejia's plan when he accompanied them to Cordero's apartment and he was not guilty of conspiracy to commit murder. Defendant also argues that trial counsel failed to cross-examine Mejia effectively regarding his prior death threats to the victim.

In assessing whether additional witnesses are sufficient to satisfy Strickland, "we are guided, in part, by the standard applicable to claims of newly discovered evidence, that is, that the evidence would probably change the jury's verdict if a new trial were granted." State v. Gideon, 244 N.J. 538, 552 (2021) (quoting State v. Allegro, 193 N.J. 352, 370 (2008)) (internal quotations omitted). Further, the Supreme Court has expressly "recognize[d] that

'[d]etermining which witnesses to call is one of the most difficult strategic decisions that any trial attorney must confront.'" State v. Pierre, 223 N.J. 560, 579 (2015) (quoting State v. Arthur, 184 N.J. 307, 320 (2005)). Accordingly, our "review of such a decision should be 'highly deferential.'" Arthur, 184 N.J. at 321 (quoting Strickland, 466 U.S. at 689).

Moreover, there is a strong presumption that defense counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. Given that presumption, "complaints 'merely of matters of trial strategy' will not serve to ground a constitutional claim of inadequacy of representation by counsel." Fritz, 105 N.J. at 54 (quoting State v. Williams, 39 N.J. 471, 489 (1963)); see also State v. Echols, 199 N.J. 344, 357-59 (2009).

Therefore, "[t]o rebut that presumption, a defendant must establish that trial counsel's actions did not equate to 'sound trial strategy.'" State v. Chew, 179 N.J. 186, 203 (2004) (quoting Strickland, 466 U.S. at 689). "In evaluating a defendant's claim, the judge 'must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of the attorney's conduct.'" Ibid. (quoting Strickland, 466 U.S. at 690).

We conclude under this "highly deferential" viewpoint, defendant failed to establish either prong of Strickland based on trial counsel's failure to interview or call Adames or Garcia as witnesses. We determine, as did the PCR judge, that these witnesses likely would have negatively affected the defense. The PCR judge also correctly found that defendant failed to establish the prejudice prong of Strickland. As the PCR judge noted, this was a strong case for the State and neither Adames' testimony, nor Garcia's testimony, had the capacity to change the jury's verdict and therefore were not exculpatory. Indeed, the judge noted,

> [t]he evidence against [defendant] was strong. He was at the scene. Eyewitnesses placed him there with a gun in his hand. Certain of the victims had him in the basement ordering them to stand and face the wall while the killing occurred. He fled the scene and involved his girlfriend, who testified against him.

In addition, we conclude the PCR judge's determination that his defense rested on different reasons for killing Cordero did not change the fact that defendant participated as a co-conspirator regardless of his proffered motive for killing Cordero was adequately supported by the record. As did the PCR judge, we determine informing the jury that Rosario and Mejia had previously threatened the victim would have supported the State's argument that defendant planned to kill the victim well in advance of the murder and that this was not a

15

A-0536-24

spontaneous killing. Therefore, counsel's strategic choice was not ineffective and the PCR judge's findings concerning this point were sufficiently supported by the record.

Moreover, Adames and Garcia's testimony would have corroborated Mejia's testimony that prior to the victim's murder, he sold drugs with defendant and co-defendants. We discern no error with the PCR judge's finding that defendant provided only bald assertions that these witnesses would have yielded competent evidence supporting a defense. See Porter, 216 N.J. at 355. We conclude defendant's conclusory assertions simply do not satisfy his burden of presenting competent evidence to support his IAC claim by failing to interview or present these witnesses under both prongs of Strickland.

We now address defendant's claim of IAC by trial counsel's failure to adequately cross-examine Mejia concerning Cordero's alleged status as a police informant. In his decision, the PCR judge found there was no admissible proof that Cordero was an informant and whether counsel could have cross-examined Mejia on this alleged information was irrelevant. We agree, and conclude trial counsel was not ineffective for failing to cross-examine Mejia about his alleged informant status when no evidence existed that he was an informant. We determine this choice by counsel was prudent and, more importantly, a logical

16

strategic choice which was firmly supported by the record at the evidentiary hearing.

## B.

We now turn to defendant's contentions in his self-represented supplemental brief asserting five additional grounds supporting his IAC claims which the PCR judge denied without a hearing. We conclude after our de novo review that defendant's arguments lack sufficient merit to warrant extensive discussion in a written opinion. R. 2:11-3(e)(2). We add the following comments.

First, defendant contends trial counsel's failure to file a motion to sever constituted IAC, as there was an antagonistic defense against Rosario that required separate trials. We disagree and conclude the PCR judge's reasoning that there was ample evidence placing defendant and his co-defendants at the scene of the crime as well as evidence of an underlying plan by the three to commit the offenses to support joinder. See R. 3:7-7 (stating "two or more defendants may be charged in the same indictment . . . if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses"). Therefore, trial counsel's

A-0536-24

failure to request severance was not IAC because it fails to meet either prong of Strickland.

Second, defendant contends his trial counsel provided ineffective assistance by (1) failing to request a third party guilt instruction deprived the petitioner of a potentially exculpatory defense, and (2) failing to request a "false in one, false in all" instruction regarding Mejia's testimony. We disagree and concur with the PCR judge's reasoning which found there was no evidence from which the jury could have concluded the victim was shot by someone other than Mejia, Rosario, or defendant. Additionally, as found by the PCR judge, the trial court provided an accomplice liability instruction which made clear that to convict either Rosario or defendant of a crime as an accomplice, the jury was required to find that the accused had the purpose to participate in that particular crime. We conclude this finding was not error. Therefore, defendant failed to present a prima facie case of IAC regarding this contention because he failed to meet either prong of Strickland.

Regarding defendant's claim that trial counsel was ineffective for not requesting a "false in one, false in all" charge, the record is clear that the trial court provided this charge to the jury. Therefore, defendant's contention has no merit and did not meet either prong of Strickland.

Third, defendant argues that trial counsel's failure to request a mistrial after a witness, Shannon Hicks, revealed to the jury that defendant had been in custody constituted IAC and deprived him of a fair trial. We agree with the State's position that this issue was addressed on direct appeal when we concluded:

> There is no reason to believe that the comment, more focused on whether or not Hicks recognized defendant than anything else, could have prejudiced Lopez's right to a fair trial. We consider this argument to be so lacking in merit as to not warrant further discussion in a written opinion. Rule 2:11-3(e)(2).

> [Lopez, slip op. at 18-19].

We have already addressed this issue on direct appeal, although in a slightly different context, and found no prejudice from this testimony especially in light of the trial court's curative instruction. See Rule 3:22-5 ("A prior adjudication upon the merits of any ground for relief is conclusive whether made in the proceedings resulting in the conviction or in any post-conviction proceeding brought pursuant to this rule or prior to the adoption thereof, or in any appeal taken from such proceedings.") We agree with the PCR judge that such a fleeting reference does not support a mistrial and trial counsel's failure to move for a mistrial was not IAC.

Fourth, defendant contends that trial counsel's failure to support the State's motion for manslaughter as a lesser-included charge to murder constituted ineffective assistance of counsel. We squarely addressed this point on direct appeal and conclude this argument lacks merit because it was previously adjudicated. Lopez, slip op. at 20-23; See also R. 3:22-5.

Lastly, defendant contends that the certification provided by Lt. Nuno A. Carvalho was insufficient to rebut his motion to compel discovery requesting production of the recorded witness interview of Cordero. Defendant asserts that trial counsel's failure to undertake a meaningful review as to whether these recordings existed deprived him of potentially exculpatory evidence. Defendant supports his contentions by asserting the certification contained a misspelling of Adames' name, referenced an incorrect docket number and only addressed the search for the recording of the interview. Defendant contends this failure by trial counsel to diligently pursue this evidence nor request an adverse inference jury instruction was IAC.

We conclude there is no merit to these contentions. Again, the PCR judge directly addressed these issues and found that the misspelling of Adames name and the listing of an incorrect docket number were inconsequential as the State located the statements, turned them over and no evidence existed in the police

20

file or otherwise that recordings of these interviews existed. We determine the PCR judge's finding that trial counsel was not ineffective in his investigation and procurement of discovery—specifically the alleged recordings—was more than adequately supported by the record.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M. C. Harley*

Clerk of the Appellate Division

A-0536-24